THE STATE OF MISSOURI, Respondent, *v.* WM. T. BROCKMAN, Appellant.

1. *Criminal law — Indictment — Larceny — Evidence — Confession, when not voluntary and inadmissible.* — Under an indictment for larceny it appeared that defendant A. was a young man; that the prosecutor, B., a strong and vigorous man, who had been his former master, charged him with stealing his property, which charge A. denied; whereupon B. said he knew better; that he knew all about it, and that A. had better own up. A. then inquired whether, if he did confess, he would be let alone and not prosecuted. B. replied that he would make no promises; that he would not say whether he would let him go or not; but that he might as well own up, and that it would be better for him. A. then said he would tell all about it. No other persons were present. B. then reduced the confession to writing, and the next morning, A. denying its truth and demanding the delivery of the paper, he was arrested and indicted. *Held*, that, considering the relative situation of the parties, such a charge and assertion of knowledge of B.'s guilt were manifestly calculated to produce fear and intimidation; and that, although no positive promise was made, an allurement was held out which excited hope. And *held*, that a confession under such circumstances was not a voluntary one, such as, of itself, to warrant a conviction; not only so, but it was inadmissible, and should not have been given in evidence.

When a confession is forced from the mind by the torture of fear or the flattery of hope, it comes in such a questionable shape that it should be wholly rejected.

*Appeal from St. Louis Criminal Court.*

*R. S. McDonald,* for appellant.

I. The court erred in permitting the confession of the defendant to go to the jury. (1 Greenl. Ev. 263–66, §§ 219–22; 1 Phil.

Ev. 449, and authorities cited; Rex v. Gibbon, 1 C. & P. 97; Rex v. Enoch & Mary Pullen, 5 C. & P. 539; 8 C. & P. 734; Hector v. The State, 2 Mo. 135; 1 Arch. Crim. Pl. 125–6; Roberts' Case, 1 Dev, 259–64; Roscoe's Crim. Ev. 34; Rex v. Cooper, 5 C. & P. 535; 15 Wend. 231.)

II. The law declares that the inducements, to make the confession of a prisoner inadmissible, must be held out by a person in authority. A constable, magistrate, or prosecutor, are considered as persons in authority. (1 Greenl. Ev. 367, § 222; Thompson's Case, 1 Leach Crim. Cas. 325; Eng. L. & Eq. 586; Chabbock's Case, 1 Mass. 144; Joy on Confessions, 59–61; Rex v. Parratt, 4 C. & P. 570; Rex v. Enoch, *supra*.)

III. The case of State v. Hawkins, 7 Mo. 190, is not in point. There the words used did not cause the confession, but the declarations or admissions were caused by the altercation and not by the words of the sheriff.

*Charles P. Johnson*, Circuit Attorney, and *H. B. Johnson*, Attorney-General, for respondent.

The confession was not rendered inadmissible by reason of the prosecutor telling him, the defendant, that it would be better for him to tell all about it — the prosecutor distinctly informing the defendant at the time that he had no promises to make. (Hawkins v. State, 7 Mo. 190; 1 Greenl. Ev., § 229; 1 Phil. Ev. 547–50.)

WAGNER, Judge, delivered the opinion of the court.

That confessions induced by the flattery of hope, or terror of punishment, are not admissible in evidence, is a principle well settled in our jurisprudence. (Hester v. State, 2 Mo. 166.) In the case of Hawkins v. State, 7 Mo. 190, where the confession was received, it does not appear that any influence was exerted over the accused by the person who had her in charge. In that case the defendant was indicted and convicted for poisoning her husband; and whilst she and a negro woman, who was also arrested as a participant in the crime, were in charge of the sheriff and another person, a conversation grew up between the

defendant and the negro woman, who she evidently thought had betrayed her and divulged the whole transaction; upon hearing which the sheriff remarked that it would be better in the long run to tell the truth about the matter, but did not give any reason why it would be better to do so. The defendant made no answer to this; but a number of minutes afterward, when they were at the sheriff's house, the defendant and the negro woman continued their criminations and recriminations, and finally the whole matter was disclosed. To the objection to the admissibility of this confession, the court very properly says: " She (the defendant) seems to have been laboring under the impression that the negro had betrayed her, and her language was dictated by a sense of disapprobation of her conduct. Laboring under the same impression, she afterward commences an expostulation with the negro, and in the course of their altercation their guilt is disclosed; it is impossible to say that these disclosures were caused by anything said by the witness."

But before any confession can be received in evidence in a criminal case, it must be shown that it was voluntary. " A free and voluntary confession," said Eyre, C. B., " is deserving of the highest credit because it is presumed to flow from the strongest sense of guilt, and therefore it is admitted as proof of the crime to which it refers; but a confession forced from the mind by the flattery of hope or the torture of fear, comes in so questionable a shape, when it is to be considered as evidence of guilt, that no credit ought to be given to it; and therefore it is rejected." (Warrickshall's Case, 1 Leach's Crim. Cas. 299.)

Phillips states the rule as follows: " A promise of benefit or favor, or threat of intimidation or disfavor, connected with the subject of the charge, held out by a person having authority in the matter, will be sufficient to exclude a confession made in consequence of such inducement, either of hope or fear. The prosecutor or prosecutor's wife, or attorney, or the prisoner's master or mistress, or a constable, or a person assisting him in the apprehension or custody, or a magistrate acting in the business, or other magistrate, has been respectively looked upon as having authority in the matter." (1 Phil. Ev. 544, and cases cited.)

As an illustration of the rule, a few cases may be referred to. Thus, where the prosecutor said to the prisoner, "Unless you give me a more satisfactory account I will take you before a magistrate," evidence of the confession thereupon made was rejected. (Thompson's Case, 1 Leach's Crim. Cas. 325; see also Commonwealth v. Harmon, 4 Barr, 269; State v. Cowen, 7 Ired. 239.) It was also rejected where the language used by the prosecutor was, "If you will tell me where my goods are I will be favorable to you" (Cass's Case, 1 Leach, 328; Boyd v. State, 2 Humph. 37); where the constable who arrested the prisoner said, "It is of no use for you to deny it, for there are the men and boy who will swear they saw you do it." (Rex v. Mills, 6 C. & P. 146.)

Whilst a confession freely and voluntarily made may furnish the most complete and satisfactory evidence, yet its admissibility should depend upon its being free of the suspicion that it was obtained by threats of severity or promises of favor, and of every influence whatever.

By the application of these principles to the case at bar, we will see whether the confession was admissible. The prosecutor, a man strong and vigorous, who had been the former master of the young man who is now the defendant, went to him and said that he had been stealing his property. The defendant answered that he had not been stealing from him. The prosecutor said he knew better, he knew all about it, and that the defendant had better own up. The defendant then inquired whether, if he did confess, he would be let alone and not prosecuted. The prosecutor replied that he would make no promises; that he would not say whether he would let him go or not; but that he might as well own up, and it would be better for him. The defendant then said he would tell all about it. No other persons were present. The prosecutor then reduced the confession to writing, and the next morning the defendant denied its truth and demanded the delivery of the paper, whereupon a policeman was called, and he was arrested, indicted, and convicted upon the evidence of his own confession. The written confession, however, was not produced, and mere oral evidence of it was given.

When the defendant was confronted with the accusation, accompanied by the positive assertion that he was guilty, and that the witness knew all about it, it was well calculated to excite in his bosom emotions of fear. Such a charge and conversation, between two men standing on grounds of perfect equality, might not have that effect. But here was a man who claimed that he had positive knowledge of the defendant's guilt, which placed him within his power ; and, considering the relative situation of the parties, it is preposterous to say that this was not calculated to produce fear and intimidation in the defendant. Although no positive promise was made, the allurement was held out which excited hope. The prosecutor would not say whether he would let the prisoner go, but assured him he had better confess, and that it would be better for him. This was a gleam of sunshine, and at once brought hope. It told him that, with positive proof against him, a confession would be to his advantage, and on that inducement the confession was undoubtedly made.

This was surely not a voluntary confession ; it was superinduced by resorting to a false pretext, and setting a trap to catch the unwary. Such a practice can not be endured. A voluntary confession is deserving of credit because it is presumed to flow from a sense of guilt, but at best it is liable to be reported inaccurately, and is seldom remembered with precision ; and when it is forced from the mind by the torture of fear or the flattery of hope, it comes in such a questionable shape that it should be wholly rejected. I think the confession was inadmissible and should not have been given in evidence. There was some other evidence given on the trial that was mere hearsay, and ought to have been excluded.

The judgment must be reversed and the cause remanded. The other judges concur.