State v. Hunter.

THE STATE v. HUNTER, Appellant.

Division Two, May 10, 1904.

1. **ARRAIGNMENT: Personally Present: Record Recitals.** The word "arraigned" means practically the same thing as being personally present. The record recited, "The defendant being arraigned, pleads not guilty," etc. *Held,* to show that defendant was present in person at the time of his arraignment.

2. **DISQUALIFYING SHERIFF: Prejudice.** Where the evidence as to the prejudice of the sheriff against defendant is conflicting, and there is no evidence tending to show that the court abused its discretionary powers in ruling that the evidence did not show that the sheriff was so prejudiced against defendant as to disqualify him. this court will not interfere with the judgment on that account.

3. **LIST OF JURORS: Delivered to Defendant: Mandatory Statute.** The statute requiring the clerk of the court to deliver to

a defendant charged with a felony, a list of the jurors found qualified to sit in the cause, before the jury is sworn, when properly requested, is mandatory, and is not a matter within the discretion of the court. It is the duty of the court to see that it is so delivered, after it is timely requested, and if not so delivered the non-action is ground for reversal.

4. ———: ———: **Non-Prejudice to Defendant.** The right of the defendant to the list of jurors found qualified to sit in judgment upon his case, before the jury is sworn, is statutory, upon which the defendant has a right to insist. The question of whether he was prejudiced by a failure to so deliver the list, does not enter into a consideration of such an assignment of error.

5. **PERJURY: Corroborative Evidence.** The admission of the defendant to third parties that he had sworn falsely in a former trial is not sufficient to convict him of perjury. The oath of the opposing witness must in some way be corroborated by other witnesses or independent circumstances. And in this case, it is held that such opposing witness was corroborated by two witnesses who testified that certain facts which defendant had sworn to in a former suit were untrue—these facts being material to the issue, and charged *in haec verba* in the information.

6. **CONFESSIONS: Must be Voluntary.** Before confessions are permissible in evidence against the objection of the person making them, it devolves upon the State to show that they were voluntary. If they were induced by the flattery of hope, or by reason of fear, or under the promise of immunity from prosecution, they are not voluntary.

7. ———: ———: **Perjury: Immunity from Prosecution.** The defendant had obtained a judgment of $5,000 for damages for personal injuries against a railroad, and testified that he had been induced by the prosecuting attorney, who had been his attorney, in the damage suit, to confess that he had obtained his judgment by perjured testimony, on the promise that if he would make such confession he would not be prosecuted for perjury, and he was corroborated by a physician, who testified that the prosecuting attorney had told him that he had promised defendant immunity from prosecution if he would confess. *Held,* that these facts and the relative situation of the parties, together with the further fact that defendant released his judgment against the railroad without any consideration whatever, show that the confession was not voluntary.

8. **Instruction: Material Matters.** An instruction for the State is not error in a perjury case because it requires the jury to find certain matters to exist which in fact are not material.

9. ——: **Corroboration: Explanation Necessary.** The words "corroborated" and "corroboration" should not be used in an instruction without explanation as to what they mean.

10. ——: **Declarations Against Self: Presumption.** In the trial of a defendant for perjury it is not proper to instruct the jury that the law presumes the statements and declarations and confessions of a defendant against himself to be true. If they are presumed to be true, then he is required to prove his innocence.

11. **INFORMATION: Separate Defendants: Joint Affidavit.** One affidavit setting forth the facts which show two persons to be guilty of perjury, is sufficient upon which to base separate informations and prosecutions against each.

Appeal from Warren Circuit Court.—*Hon. E. M. Hughes*, Judge.

REVERSED AND REMANDED.

*J. W. Delventhal* and *E. Rosenberger & Son* for appellant.

(1) The plea is the first step in the trial. The defendant must be present in person in a felony case, his plea duly taken, and the record must show this fact affirmatively. (2) While the court is not bound to take the affidavit of a party that the sheriff is prejudiced against him as conclusive, and while it has some discretion about the matter, yet, if this discretion is abused, it is reversible error. State v. Leabo, 89 Mo. 247; State v. Hultz, 106 Mo. 41. (3) A list of the jurors who have been found by the court qualified to sit as such in his case shall be delivered to defendant . . . before the jury is sworn, if such list be required. Sec. 2623, R. S. 1899; State v. May, 142 Mo. 135. (4) To authorize a conviction of perjury there must be two witnesses testifying to the falsity of the statement, or one witness with strong corroborating circumstances of such a character as to clearly turn the scale and overcome the oath of the party and the legal presumption of

his innocence. And by corroborative evidence is not meant such as emanates from the mouth of the prisoner himself, but evidence *aliunde*, evidence which tends to show the perjury independently of his own declarations, and in the case at bar there was no such corroborative evidence and the court should have directed an acquittal. Schwartz v. Commonwealth, 27 Grat. 1025; State v. Buckley, 18 Ore. 228. (5) The court erred in admitting the so-called confessions and satisfaction of judgment and the affidavit of the defendant admitting his guilt. Confessions induced by the flattery of hope, or terror of punishment are not admissible in evidence, and before any confession can be received in evidence in a criminal cause, it must be shown to be voluntary. Hector v. State, 2 Mo. 166; State v. Conley, 12 Mo. 462; State v. Brockman, 46 Mo. 566; State v. Hagan, 54 Mo. 192; State v. German, 54 Mo. 526; State v. Young, 119 Mo. 495; State v. McKenzie, 144 Mo. 40; State v. Moore, 160 Mo. 443; State v. Jones, 171 Mo. 401. (6) Defendant repeatedly offered evidence tending to prove a conspiracy formed for the sole purpose of convicting him for the purpose of preventing him from collecting his judgment against the railroad company, and offered to show the animus which prompted the prosecution, the interest of the State's witnesses in the trial, and all these proffers were excluded, and it was error to do so. (7) The court erred in giving instructions 1, 2, 3, 5 and 8 of its own motion. (a) Instruction 2 is fatally erroneous because it fails to state that by corroborative evidence is not meant such as emanates from the mouth of the prisoner himself but evidence *aliunde*, evidence which tends to show the perjury independently of his own declarations. Schwartz v. Commonwealth, 27 Grat. 1025; Buckley v. Oregon, 18 Ore. 228. (b) In trials for perjury it is error for the court to instruct the jury that "what the defendant said against himself, if anything, the law presumes to be true because said against himself," and

hence instruction 5 is erroneous. State v. Williams, 30 Mo. 364; Regina v. Wheatland, 8 Car. & Payne 283; Regina v. Hughes, 1 Car. & Ker. 519; 2 Russell on Crimes, 651, 652; Roscoe Crim. Ev., 767, 768; 3 Wharton, par. 2275; Bishop Crim. Law, par. 1004 and 1005; Greenleaf on Evidence, 259; Rhodes v. Commonwealth, 78 Va. 692; Patterson v. State, 74 Ala. 34; Freeman v. Florida, 19 Fla. 552; Schwartz v. Commonwealth, 27 Grat. 1025; State v. Buckley, 18 Ore. 228; Gabrielsky v. State, 13 Tex. App. 428; Brooks v. State, 29 Tex. App. 582; United States v. Deady, 127. (8) (a) If the confessions and declarations were made by the defendant to the prosecuting attorney under inducements held out by the prosecuting attorney, and acting under these inducements the defendant made a confession, then the jury should have disregarded them and the jury should have been so instructed, and it was error to refuse defendant's instruction 7. State v. Conley, 12 Mo. 166; State v. McKenzie, 144 Mo. 40; State v. Moore, 160 Mo. 443; State v. Jones, 171 Mo. 401. (b) Defendant's instruction 10 should have been given. "Where a confession has once been obtained by the means of hope or fear, confessions or admissions subsequently made are presumed to come from the same motive." Underhill on Crim. Ev., par. 130; State v. Jones, 54 Mo. 478; State v. Brown, 73 Mo. 631. (9) (a) The information is fatally defective and the motion in arrest of judgment should have been sustained. (b) Where the affidavit of a private person has been filed, the information of the prosecuting attorney will be considered as based upon it; and if the affidavit is insufficient, the information can not stand. State v. Connel, 45 Mo. App. 94; State v. Lennan, 66 Mo. App. 472; State v. Gartrell, 14 Ind. 280; State v. Beebe, 83 Ind. 171; City of Galt v. Elder, 47 Mo. App. 164; State v. White, 55 Mo. App. 356; State v. Grubb, 71 Mo. App. 214; State v. Whittaker, 75 Mo. App. 184. (c) Perjury can not be a joint crime. If two witnesses, on the trial of one cause, com-

mit separate perjuries their indictments must be separate. Wharton's Crim. Law, 653; 2 Bishop New Crim. Procedure, sec. 936; Rex v. Philips, 2 Str. 921; Vaughn v. State, 4 Mo. 530; State v. Daubert, 42 Mo. 242; Lindsay v. State, 48 Ala. 169; State v. Deaton, 92 N. C. 788; U. S. v. Davis, 33 Fed. 621; U. S. v. Kozinski, 2 Sprague (U. S.) 7; Rex v. Nickless, 8 C. & P. 757; Reg. v. Dovey, 2 Eng. L. & Eq. 532.

*Edward C. Crow,* Attorney-General, and *C. D. Corum* for the State.

(1) The record showing the arraignment of the defendant reads as follows: "The defendant, being arraigned, pleads not guilty, and cause continued." This is sufficient to establish that the defendant was personally present. R. S. 1899, sec. 2610. (2) The court did not err in overruling defendant's motion to disqualify the sheriff. It is true that there was evidence offered tending to show that the sheriff was prejudiced against defendant, but it is also true that there was evidence offered on the motion on behalf of the State, which tended to show that the sheriff had no prejudice. Affidavits were offered in support of and against the motion. Under such circumstances, the finding of the trial court will not be disturbed in the absence of evidence showing that its finding was arbitrary and unjust. State v. Hultz, 106 Mo. 41; State v. Leabo, 89 Mo. 249; State v. Taylor, 134 Mo. 138. (3) The record recites that "before the jury was sworn, defendant's counsel requested of the court that the clerk of the court be ordered to deliver to defendant a list of the jurors who had been found by the court qualified to sit as such in his case." "It was a matter within the wise discretion of the court, and it is apparent no harm has resulted, as there is no objection in the record to any individual juror on the panel afterwards selected from

which the jury was chosen to try this case." State v. Faulkner, 175 Mo. 578. (4) As to the contention that it was error for the court to instruct the jury that what defendant said against himself the law presumed to be true, because said against himself, the Missouri citation, 30 Mo. 364, is not applicable. A casual reading of that case will disclose that Judge Scott had in mind the question as to the sufficiency of the evidence to sustain the charge of perjury, and he observed that the statements of the defendant then were not sufficient to convict of that crime. (5) Defendant complains that the court erred in refusing to instruct the jury that if they believed that the confessions or admissions made by defendant were made on account of an inducement held out to him by the prosecuting attorney or promises which operated on his mind in the hope of escaping punishment, or any other inducement amounting to force, threats or promises, then they should disregard such confession. In the case of State v. Brennan, 164 Mo. 510, the defendant asked and the court refused an instruction containing substantially the same points raised in the instruction asked by defendant here and refused by the court.

BURGESS, J.—On the twenty-fourth day of November, 1902, there was pending in the circuit court of Warren county an action by the defendant Hunter, a young negro man, against the Wabash Railroad Company, for damages for personal injuries alleged to have been sustained by Hunter by reason of the negligence and wrongful acts of defendant's servants and employees in charge of one of its trains upon which he was a passenger. On said twenty-fourth day of November said cause of Hunter against the Wabash Railroad was tried by the court and jury, the trial resulting in a verdict and judgment for plaintiff in the sum of five thousand dollars. J. B. Garber, Esq., then prosecuting attorney of Warren county, and one Vincent McShame

were attorneys for Hunter in the prosecuting of said suit, and Judge C. E. Peers, a member of the Warrenton bar, represented the defendant.

Shortly after the verdict was rendered in said cause Peers obtained from one William Pleasants, one of Hunter's witnesses, an admission that he had perjured himself on trial of said cause. On December 13, 1902, N. P. Kemp, a private detective for the Wabash Railroad Company, appeared at Warrenton, and with the aid of J. B. Garber, prosecuting attorney, and also attorney for Hunter in his civil action against the Wabash Railroad Company, an alleged confession was obtained from Hunter, wherein Hunter admitted that he had obtained his judgment on perjured testimony, and that his testimony on the trial of that cause was false. Hunter then in the presence of Kemp, Garber, Judge Peers, Collector Ordelheide and Sheriff Polster, was induced to sign a satisfaction of his $5,000 judgment, and to give an order to the clerk to satisfy said judgment on the records, stating it had been obtained on perjured testimony. At the same time Hunter was induced to enter a stipulation with Judge Peers, wherein Hunter again admitted that he had obtained the judgment on perjured testimony and consented that this division of the Supreme Court might reverse the judgment of Hunter v. Wabash Railroad Company.

On December 16, 1902, J. B. Garber, prosecuting attorney and attorney for Hunter in his civil action, had Hunter brought to his office and make an affidavit that his former testimony was false.

After this, no action was taken in the matter. Hunter was permitted to go at large. Thereafter, on January 6, 1903, N. P. Kemp filed an affidavit in the Warren county circuit court, charging the defendant and one Wm. Pleasants jointly with the crime of perjury. The defendant was thereupon arrested and on January 13, 1903, a special term of court was held. The record shows that on said day defendant was arraigned and

pleaded not guilty, but the affidavits in support of defendant's motion for a new trial show that defendant never was arraigned, that he was in jail and never was brought into court for the purpose of pleading.

On April 23, 1903, defendant filed his motion to disqualify the sheriff, alleging that the sheriff had manifested a personal interest in and about securing the conviction of the defendant; that he had used extreme and arbitrary measures to secure the conviction of the defendant; that he was unduly biased and prejudiced against the defendant, etc. After the motion had been argued the court called the sheriff to the stand, over the objections of the defendant, and permitted the sheriff to testify. The sheriff claimed that he had no bias or prejudice against the defendant. On cross-examination, Sheriff Polster admitted that he had refused defendant's counsel permission to advise with defendant, unless he, the sheriff, was present and heard the consultation, and that he would not allow defendant's counsel to advise with the defendant until after Judge Hughes had issued an order in chambers directing him to do so. That he was satisfied of defendant's guilt and had stated that all the lawyers in the State of Missouri couldn't keep the defendant out of the pen. That when he conveyed defendant to Montgomery City, under a writ of habeas corpus, he instructed the jailer not to permit any one to talk to him.

The court overruled the motion and defendant duly excepted.

When the case was called for trial, before the defendant would announce as to whether he was ready for trial, he demanded of the court that the clerk be ordered to furnish him with a certified copy of the information in this cause, whereupon the clerk was ordered to furnish defendant with one. By the affidavits filed in support of the motion for a new trial it appears that the clerk never did furnish defendant or his counsel with a certified copy of the information.

Before the jury was sworn defendant's counsel requested of the court that the clerk be ordered to deliver to the defendant a list of the jurymen who had been found by the court qualified to sit as such in his case. Which request was overruled by the court, and defendant then and there saved an exception.

At the close of all the evidence the defendant interposed a demurrer to all the evidence, which was refused and an exception saved.

The court of its own motion and over the objection and exception of defendant instructed the jury as follows:

"1. If the jury find from the evidence in this case that at the county of Warren and State of Missouri, on the twenty-fourth day of November, 1902, the cause of Miner Hunter against the Wabash Company, being a civil action for damages, was pending in and on trial before the circuit court of Warren county, Missouri, and that defendant was sworn as a witness on said trial, and in giving his testimony therein, he willfully, corruptly and falsely testified that on the fourth day of July, 1902, he bought a round-trip ticket on the Wabash train from Mr. Foster, the agent of the Wabash Railroad Company, from Warrenton, Missouri, to Jonesburg, Missouri, and paid him fifty cents for it, and that when the train pulled into Jonesburg, he entered into the coach next to the last one, which was lighted, and that a man with uniform on, such as train men wear, took up his ticket, and the train pulled down to the end of the switch, and then backed up on the side-track, and cut loose the car in which he was then riding, and a man with a uniform on said to him, if you are going on to Warrenton take the next car; that he then jumped down and ran ahead to catch the forward car, but before he could get on the train, he struck against the cattle guard and was thrown under the wheels of the train and his foot was mashed, then the jury will find defendant guilty of perjury as charged, and assess his

punishment in the penitentiary at not less than two years, nor more than seven years.

"The words willfully and corruptly as used in the foregoing instruction mean knowingly and intentionally.

"2. To authorize the conviction of defendant in this case, the jury must find the defendant did make the statement as set out in the first instruction, when sworn as a witness on the trial of the cause, therein set forth, and that he did so willfully, corruptly, and that such statement is false; the falsity of such statement must be established to your satisfaction, beyond a reasonable doubt, either by the evidence of more than one credible witness, or by one such witness strongly corroborated by other evidence of facts or circumstances which convinces your minds of the truth of the testimony of such single witness, and you must be further satisfied that the testimony of such single witness thus corroborated establishes the falsity of such statement beyond a reasonable doubt.

"3. You are further instructed that the statement set out in the first instruction, if made by defendant, when sworn as a witness, in the trial of the cause therein mentioned, was a material one on the trial of said cause.

"4. You are further instructed that the previous good character of the defendant for truth and veracity, if proven to your reasonable satisfaction, is a fact in the case, which you ought to consider in passing upon the question of his guilt or innocence of this charge. But if all the evidence in the case, including that which has been given touching the previous good character of the defendant, shows him guilty of the charge, then this previous good character *can not* justify, excuse, palliate or mitigate the offense. And you are further instructed that if you find the character of defendant, previous to the accident in which he was injured, was never discussed in the community in which he lived, for

truth and veracity, then this fact is evidence of the previous good character of defendant.

"5.   If you find from the evidence that the defendant made any statement or statements in relation to the offense charged in the information, after such offense is alleged to have been committed, you must consider such statement or statements altogether.   What the defendant said against himself, if anything, the law presumes to be true because said against himself.   What he said for himself you are not bound to believe, because said in a statement or statements proved by the State, but you may believe it or disbelieve it, as it is shown to be true or false by the evidence in the case.   It is for you to consider, under all the circumstances from the evidence, how much of the whole statement or statements of the defendant, proved by the State, is worthy of belief, and in determining the credibility of such statement, you may consider the circumstances under which statement or statements were obtained.

"6.   You are further instructed that the defendant is a competent witness on his own behalf, but the fact that he is the defendant on trial, and the interest he has in the result of the suit, may be considered by the jury in passing upon the credibility of his testimony.

"7.   You are further instructed that you are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony.   In determining such credibility and weight, you may take into consideration the demeanor of the witness, his manner on the stand, his interest, if any, in the result of the suit, his prejudice or bias either for or against the accused, if any, his relations to, feelings for or against the defendant, the probability thereof, as well as all facts and circumstances given in evidence; and if you believe that any witness has testified falsely intentionally to any material fact in the case, then you are at liberty to disregard all or any part of the testimony of the witness or witness so testifying.

"8.   You are further instructed that the law pre-
sumed the defendant innocent of the offense here
charged against him, and the burden of proof rests on
the State to show to the jury to show from the evidence
in his case his guilt as charged, beyond a reasonable
doubt; if you have a reasonable doubt of defendant's
guilt you should acquit; but a doubt to authorize an
acquittal on this ground ought to be a substantial doubt,
touching defendant's guilt, and not a mere possibility of
his innocence.   And it is incumbent on the State to show
to the jury, beyond a reasonable doubt, the falsity of
the statement charged to have been made by the defend-
ant as a witness, in the case of Hunter against the
Wabash Railroad Company, as alleged, by the character
of evidence mentioned and described in instruction
numbered 3, in this case."

Defendant prayed the court to instruct the jury as
follows:

"1a.   The court instructs the jury that any extra-
judicial confession made by the defendant, or any con-
fession made by him out of court, is not sufficient to
convict the defendant, unless they are corroborated by
other evidence, and the crime be proven to have been
committed by other testimony.

"2a.   Although you may believe from the evidence
that the defendant freely and involuntarily told Wm.
P. Morsey and others and admitted to them that he
had testified falsely to the facts in the case of Hunter
v. Wabash Railroad Company, as set forth in the infor-
mation, yet if you further believe from the evidence
that on the trial of Hunter v. Wabash Railroad Com-
pany the facts as testified to by defendant were sub-
stantially true, then you will acquit the defendant not-
withstanding the statements he afterwards made to the
contrary.

"3a.  The court instructs the jury that if you believe
from the evidence that the facts alleged by the State to
have been falsely testified to by the defendant, in the

case of Hunter v. Wabash Railroad Company, were substantially true, then you must acquit the defendant.

"2. The court instructs the jury that the burden of proof to establish the guilt of the defendant devolves upon the State and rests upon it throughout the entire trial, and that the law clothes the defendant with the presumption of innocence, which attends and protects him until overcome by competent evidence which proves his guilt to your entire satisfaction beyond a reasonable doubt. It is not sufficient in this case that there may be a suspicion, or possibility or probability of his guilt, nor can his guilt be arrived at by guessing or by compromise, but the testimony must be of such a nature that, when you have considered it all, you find a clear and abiding conviction of the guilt of the defendant beyond a reasonable doubt. This much is required by the law; if this much has not been proven, you will acquit the defendant.

"3. The court instructs the jury that in making up their verdict as to the guilt or innocence of the defendant they must consider the evidence offered in his behalf as to his previous good character just like any other fact in this case; and if, after weighing and considering such evidence of good character along with the other evidence in this case, it does not appear to the jury that the defendant is guilty of the charge preferred against him beyond all reasonable doubt, then the jury shall acquit the defendant.

"The court instructs the jury that the fact that a person's character for truth and veracity has never been discussed is a fact that should be taken into consideration in determining the question of character in regard to truth and veracity of the individual whose character is in question.

"4. The court instructs the jury that if any witness has manifested an interest in the case, the jury should receive such testimony of the witness who appeared to manifest such interest, with caution.

"5. The court instructs the jury that you are the sole judges of the credibility of the witnesses and of the weight and value to be given their testimony. In determining as to the credit you will give to a witness and the weight and value you will attach to a witness's testimony, you should take into consideration the character of the witness, the conduct and appearance of the witness upon the stand, the interest of the witness, if any, as to the result of the trial, the motives actuating the witness in testifying, the witness's relation to or feeling for or against the defendant, or the alleged injured party, the probability of the witness's statement, the opportunity the witness had to observe and to be informed as to the matters respecting which such witness gives testimony, and the inclination of the witness to speak truthfully or otherwise as to the matters within the knowledge of such witness. All of these matters being taken into account, with all the other facts and circumstances given in evidence, it is your province to give to each witness such value and weight as you deem proper. If upon a consideration of all the evidence, you conclude that any witness has sworn falsely as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness's testimony.

"6. The court instructs the jury that the law gives the defendant the right to testify in his own behalf, and while the jury may, in determining the weight to be given to his testimony, take into consideration that he is the defendant, and the interest he has in the case, still, the jury are not for this reason justified in disregarding his testimony if they believe from all the facts and circumstances in evidence, including this fact, that he is telling the truth. The weight to be given his testimony is to be determined by the same principle as that of any other witness.

"7. The court instructs the jury that if you believe from the evidence that the confessions, declarations or

admissions made by defendant to J. B. Garber, prosecuting attorney for Warren county, were made by inducements held out to the defendant by the said prosecuting attorney, or promises which operated upon the mind of the defendant in hope of escaping punishment, or any other inducements amounting to threats, fears or promises, and that from such inducements the defendant made his several confessions, they should disregard them.

"8. The court instructs the jury that before any confession can be received as evidence in a criminal case, it must be shown that it was voluntarily made, and if the confessions drawn from defendant were by the use of flattery of hope, or by the torture of fear, or by such promise held out to the defendant as rendered his said confessions involuntary, then the jury should reject such confessions.

"9. The court instructs the jury that if the defendant was made to believe that a confession of the whole matter connected with the crime charged would not be used against him to his prejudice in a court of justice, that the confession would better his prospects for escaping punishment, and that acting upon this assurance that the confession so made would not be used against him he made certain confessions, then the jury are instructed that this is such an inducement as should warrant you in excluding the evidence in rendering a verdict in the cause.

"10. The court instructs the jury that if a confession made to one of the witnesses was the same as that made to the person who presented inducements to the defendant, and after the first confession in answer to such inducements, then you are instructed that it should be regarded as the confessions made in the first instance.

"11. Before you can convict the defendant of the crime with which he stands charged you must believe from the evidence beyond a reasonable doubt that upon a trial of Miner Hunter v. Wabash Railroad Company,

this defendant corruptly swore falsely as to the facts set forth in the information, and you are therefore instructed that if you have a reasonable doubt· as to whether the facts testified to by defendant in the aforesaid trial are false, you will give the benefit of the doubt to the defendant and acquit him, and the burden of proving the facts false as testified to by defendant on the aforesaid trial rests upon the State.''

The·instructions numbered 1a, 2a and 3a the court gave on behalf of the defendant, and those numbered 2 to 11, inclusive, prayed for by the defendant, the court refused to give, to which action of the court, in refusing to give said instructions 2 to· 11, ·defendant then and there excepted.

The jury found defendant guilty as charged and fixed his punishment at two years' imprisonment in the penitentiary. From the sentence and judgment he appeals.

Defendant insists that the record fails to affirmatively show that he was personally present in court when he was arraigned. With respect to this contention the record contains the following entry·: ''The defendant being arraigned, pleads not guilty, and the cause continued.'' But it is said for defendant that this entry falls short of showing that the defendant ''was arraigned in person, or that he was corporally present at the time,'' which was necessary to a valid trial.

While it was necessary that the record should show that defendant was personally present at the time of making said entry, it was not absolutely necessary that it be shown by the use of any particular words or language, provided, the words or language used mean the same thing. The language used is, ''the defendant being arraigned, pleads not guilty,'' etc. Arraignment means, ''to call or set as a prisoner at the bar of the court to answer to the matter charged in an indictment or complaint.'' [Webster's International Dictionary, 83; 2 Cooley's Blackstone (4 Ed.), 322.]

It thus appears that the word "arraigned" means practically the same thing as being personally present, at the time, for it could not be true that he was in fact arraigned and pleaded to the indictment if not personally present.

It is asserted that the court erred in overruling the defendant's motion to disqualify the sheriff. Upon this question there was evidence tending to show that the sheriff was prejudiced against the defendant, while upon the other hand there was evidence to the contrary, and under such circumstances this court will not interfere with the ruling of the trial court upon a showing made by affidavits pro and con. Especially is this so in the absence of evidence showing that the ruling of the court was an abuse of its discretionary power which it has the right to exercise with respect to such matters. [State v. Taylor, 134 Mo. 109; State v. Leabo, 89 Mo. 247; State v. Hultz, 106 Mo. 41.]

Before the jury was sworn defendant requested of the court that the clerk of the court be ordered to deliver to him a list of the jurors who had been found by the court qualified to sit as jurors upon the trial of the cause, but for some reason not disclosed by the record this request was not granted. This non-action of the court, and the failure by defendant to receive the list of jurors at the time indicated, is assigned for error. By section 2623, Revised Statutes 1899, in cases of this character, it is provided that a list of jurors who have been found by the court to be qualified to sit as such in his case shall be delivered to the defendant, before the jury is sworn, if such list be *required*. It was of course the duty of the clerk to furnish this list, and of the court to see that it was done after its attention was called to the fact that it was required, but it was not essential that an order of record be made requiring the clerk to furnish it, but a verbal direction by the court from the bench to the clerk to furnish defendant with the list was all that was necessary. But no such direction was made,

nor does it appear that the list was furnished defendant as required. The State, however, contends that it was a matter within the wise discretion of the court, and as it is apparent that defendant was not prejudiced thereby, as there is no objection in the record to any individual juror on the panel afterwards selected from which the jury was chosen to try this case, no harm resulted to defendant on account of his failure to receive the list of jurors before the jury was sworn to try the case. We are unable to agree, however, that whether defendant should or should not be furnished with a list of jurors after the same was required by him, was a matter within the discretion of the court; on the other hand, in our opinion the statute is mandatory in that it says a list of jurors found by the court *shall* be delivered to defendant before the jury is sworn if such list be *required.* Nor is it a question as to whether or not defendant was prejudiced by reason of his failure to obtain the list of jurors when required, as the right to such list is statutory, and he had the right to stand upon this right regardless of the fact that he may not have been injured by his failure to receive the list. That he may have waived it we concede, but there is no pretense that he did so. [State v. May, 142 Mo. 135.]

It is said that the evidence was not sufficient to justify the conviction of defendant of the crime of perjury, in that there were not two witnesses testifying to the falsity of the statements, nor one witness with strong corroborative circumstances of such a character as to clearly turn the scale and overcome the oath of the party and the legal presumption of his innocence. And by corroborative evidence is not meant such as emanates from the mouth of the prisoner himself, but evidence *aliunde;* evidence which tends to show the perjury independently of his own admissions or statements. "The true principle of the law is this: The evidence must be something more than sufficient to counterbalance the oath of the prisoner and the legal presumption of his

State v. Hunter.

innocence. The oath of the opposing witness, therefore, will not avail, unless it be corroborated by other independent circumstances. But it is not precisely accurate to say that these additional circumstances must be tantamount to another witness. The same effect being given to the oath of the prisoner as though it were the oath of a credible witness, the scale of evidence is exactly balanced, and the equilibrium must be destroyed by material and independent circumstances, before the party can be convicted. The additional evidence need not be such as, standing by itself, would justify a conviction in a case where the testimony of a single witness would suffice for that purpose; but it must be at least strongly corroborative of the testimony of the accusing witness.'' [State v. Heed, 57 Mo. 252; State v. Hill, 91 Mo. 423; State v. Blize, 111 Mo. 464.] That the evidence adduced by the State was sufficient to comply with the requirements of the law we think clear. The collector of fares on the train at the time of the accident testified that he did not enter the darkened car and take up a ticket held by defendant as the defendant testified he did. The conductor in charge of the train at the time, and also a brakeman, both testified that no person left that car and came past the rear end of the train proper, while defendant testified that he did leave the darkened car and come past where some of the train officials were. Defendant also testified that he was ordered by the agent of the company to vacate the darkened car and take the car ahead. The train officials all testify that no such order was given by any one of them. It is, therefore, clear that there was sufficient evidence to justify the verdict.

The next question presented for consideration is with respect to the action of the court in admitting in evidence, over the objection of defendant, the confession made by him in which he admitted that he had obtained his judgment against the Wabash Railroad Company on

perjured testimony, and that his testimony on the trial of said cause was false.

It is well settled that before confessions are admissible in evidence against the objections of the person making them, it must be made to appear that they were not induced by the flattery of hope, or by reason of fear, and that it devolves upon the State to show that such confessions were voluntary.

The evidence offered by defendant, including his own testimony, tends to prove that the confession was made to one Garber, the prosecuting attorney of the county, under the promise by him of immunity from prosecution for perjury. In this he is corroborated by Dr. Foreman, who testified that Garber told him that he had promised defendant not to prosecute him for perjury if he would make a confession.

We thus have the testimony of defendant, supported by the testimony of another witness, that this confession was obtained by the officer whose duty it was to prosecute the defendant for the crime, against that of the public prosecutor alone.

And when these facts are considered in connection with the fact that Garber had been one of defendant's attorneys in his suit against the railroad company, that defendant had therein recovered judgment for the sum of five thousand dollars, which he was induced to release and satisfy without any consideration whatever, we can but conclude that the confession made by him to Garber was induced by the promise of Garber not to prosecute him if he confessed the perjury, and considering the relative situation of the parties a confession under such circumstances was not a voluntary one, and should not have been admitted in evidence. [State v. Brockman, 46 Mo. 566.]

We do not intend to be understood by what has been said as holding that other admissions and statements made by defendant tending to show that he committed perjury on the trial of his suit against the railroad com-

pany, were inadmissible in evidence against him, if voluntarily made.

A number of instructions given by the court of its own motion are criticised, among others the first and third. The objection to the first is that it told the jury that certain matters therein stated were material when in fact some of them were not. There were, however, other matters contained in the instruction that were material, and the only effect of this instruction was to place upon the State the burden of proving more than it was necessary to prove. Certainly the defendant could not be harmed by requiring the State to establish all the matters set forth in that instruction.

The criticism on the third instruction is without merit.

The second instruction is criticised upon the ground that it attempts to explain to the jury the quantum of evidence necessary to a conviction, viz., "the evidence of more than one credible witness, or by one such witness strongly corroborated by other evidence of facts or circumstances which convinces your minds of the truth of the testimony of such single witness." The argument is that the jury are left in the dark as to what corroborative evidence means, and are left at liberty to infer that the subsequent declarations of the defendant were corroborative evidence of the single witness, which is not the law. That by corroborative evidence is not meant statements or admissions of the defendant, but evidence *aliunde,* evidence which tends to show the perjury independently of his own declarations, and the jury should have been so instructed.

What is meant by corroborative evidence is said to be *aliunde* evidence which tends to show the perjury independent of the prisoner's declarations or admissions. [State v. Buckley, 18 Ore. 228; Gabrielsky v. State, 13 Tex. App. 428; 2 Wharton's Criminal Law (10 Ed.), sec. 1319.] Schwartz v. Commonwealth, 27

Gratt. 1025, is a well-considered case and announces the same doctrine.

In Greenleaf Ev. (16 Ed.), sec. 259, it is said: "If the evidence adduced in proof of the crime of perjury consists of two opposing statements of the prisoner, and nothing more, he can not be convicted, for if one only was delivered under oath, it must be presumed, from the solemnity of the sanction, that that declaration was the truth and the other an error or a falsehood; though the latter, being inconsistent with what he has sworn, may form important evidence, with other circumstances, against him."

Previous contradictory statements, made with or without oath, may be very important evidence, in connection with other circumstances against the accused; but, no matter by how many witnesses the different and conflicting statements may be proved, that is not corroborative proof of the *corpus delicti.* [Peterson v. State, 74 Ala. 34.] This instruction did not, we think, go far enough in that it did not tell the jury what was meant by "corroborated," nor was it explained by any other instruction. It can not be said that the meaning of the word when used in cases of this character is well understood, hence unnecessary to define it.

Instruction numbered five is complained of by defendant upon the ground that such an instruction should not be given in a prosecution for perjury, hence erroneous in this case. Such an instruction was held to be erroneous in the case of the State v. Williams, 30 Mo. 364. The court said:

"In trials for perjury it is not proper to instruct the jury that the law presumes the declarations of a party against himself to be true, when the object of such an instruction is to make the declarations evidence of the falsity of the oath. Such declarations are admissible, and their weight is to be determined by the jury. But of themselves they are not sufficient to convict one of the crime of perjury. Even when the defendant has

made two distinct statements under oath, one directly the reverse of the other, it is not enough to produce the one in evidence to prove the other to be false. [Whar. Cr. Law, 761.] If the declarations of the party are presumed to be true, then the burden of proving the defendant's guilt is removed from the State, and he is required to prove his innocence.''

The rule announced in that case is unquestionably correct, and what we have said in regard to the quantum of evidence necessary to the conviction of the defendant for perjury, is in line therewith, that is, that while the contradictory statements made by defendant with respect to the matters with which he is charged with having committed perjury, and to which he testified, under oath, were admissible in evidence, statements made by him at other times when not under oath, the legal effect of which was to contradict his declarations under oath, are admissible in evidence, but he could not be convicted on such statements in the absence of evidence *aliunde* which tends to show the perjury independent of the defendant's declarations or admissions. If as was said in State v. Williams, supra, the declarations of the party are presumed to be true, then the burden of proving the defendant's guilt is removed from the State, and he is required to prove his innocence.

A final contention is that the information is fatally defective in that it is based upon the affidavit of one N. P. Kemp, which charges the defendant Hunter and one William Pleasants jointly with the crime of perjury. But we do not think the affidavit or information should be held invalid as to the defendant for that reason. While the defendant and Pleasants could not be prosecuted jointly under an information charging them with perjury, they could be prosecuted separately, and the affidavit in question is sufficient upon which to predicate an information against either of them. It is not necessary that an affidavit upon which an information is based should be as definite and specific as the informa-

tion, nor that it should charge the defendant with any specific offense or grade thereof, but it should set forth the facts as near as may be and the person or persons charged therewith (sec. 2478, R. S. 1899), and then it is for the prosecuting attorney to determine therefrom whether the facts shown by it constitute a criminal offense, and if so of what character, and to draw his information in accordance with the facts stated therein.

Our conclusion is, that this contention is without merit.

The judgment is reversed and the cause remanded for further trial in accordance with the views herein expressed.

All concur.